## MADISON BANKS, A FREEDMAN v. THE STATE.

Article 765 of the Penal Code reads as follows: "If any person shall steal any horse, gelding, mare, colt, ass, or mule, he shall be punished by confinement in the penitentiary not less than five nor more than fifteen years." (Paschal's Dig., Art. 2409, Note 686.)

Though the word "horse" is ordinarily employed as a generic term, comprehending all animals of the horse kind, irrespective of their sex or age, yet in article 765 of the Penal Code the word cannot be so construed, inasmuch as the context of the article proceeds to specify other animals of the same class, as "gelding, mare, colt," &c. (Paschal's Dig., Art. 2409, Note 686.)

Statutes are to be so construed that effect and meaning may be given to each word, so far as that can be done consistently with their object and purpose.

The averments of an indictment must be as specific as the language of the statute on which it is founded, and the proof must correspond with the averments.

An indictment, therefore, under article 765 of the Penal Code, for the theft of a "horse," is not sustained by proof of the theft of a mare. (Paschal's Dig., Art. 2409, Note 686.)

APPEAL from Travis. The case was tried before Hon. JOHN IRELAND, one of the district judges.

The appellant, who was a freedman, was indicted at the

November term, 1866, for the theft of a horse belonging to John N. Lancaster. On the trial, at the same term, Lancaster, the witness for the State, proved that the animal stolen was a mare. The court charged the jury that proof of the theft of a mare will sustain an indictment for the theft of a horse. Instructions to the contrary, asked in behalf of the defendant, were refused. Verdict of guilty, and judgment against defendant of confinement in the penitentiary at hard labor for the term of five years, in accordance with the finding of the jury.

Defendant moved for a new trial, which was refused, and he appealed, assigning error in the instructions given and refused.

*Hancock & West,* for the appellant, cited Penal Code, Art. 765; 2 Arch. Crim. Pl., Waterman's Notes, p. 399, note 1; 2 Russell on Crimes, 133.

*William M. Walton, Attorney General,* for the State.—The court below ruled that such proof would meet and sustain the allegation in the indictment, and I think correctly so. (Penal Code, Arts. 20, 21, 22, p. 460.)

Do those articles mean anything? Do they not form rules for the construction of other articles of the Code? If not, what purpose do they serve, and why placed in the Code? If they do form such rules, are they not controlling, when it is desired to construe the words of the Code, after they are used in an indictment? If they are rules to govern or aid in the construction of words of the Code, do they not perform the same office for us when the doubtful word, or the word susceptible of more than one meaning, is used in an indictment?

Rule 22 is peculiarly applicable to the question before the court.

The use of the word "horse" in the indictment can, by reasonable construction, be made to mean the animal called

a mare, because the mare is a species of the *genus* horse. Not so, if the word mare had been used in the indictment. Then, the theft of a species being charged, the proof must conform to the allegation.

The true rule is, that the use of a generic word includes all the species, but when the word descriptive of a species is used, the pleader is held to his description.

The word "horse," as used in the statute, is generic, and includes the mare, as well as the gelding and colt. It certainly would not be seriously contended that, if the proof in this case showed that a gelding was the kind of animal stolen, instead of a mare, the proof would not sustain the verdict, and yet the reasons that make the proof bad, when a mare is proven to have been stolen, are equally applicable if a gelding, or "ordinary riding horse," had been proved to have been the animal stolen. The reason runs itself into confusion and contradiction, and ignores the common meaning commonly given to one of our commonest words.

What is a reasonable construction of the statute? The object of the law was to reach and punish criminals, and not to place in the Code words to entrap the officers of the law, and calculated to shield offenders. Does the word horse, as used in the statute, mean simply a "stoned horse," stallion, or stock-horse? If so, why was not one of these words used? They have a meaning as common and as generally used as the word "gelding," mare, or colt; indeed, the word stallion is much more common than the word gelding.

The word "horse," as used in the Code, is generic, and is broad enough to cover each of the species—stallion, gelding, mare, colt—and at the same time restricted enough to mean each one specifically.

Train & Heard, p. 333, Precedents of Indictments, say: "An indictment, describing a thing by its generic term, is supported by proof of a species which is clearly compre-

hended within such description, notwithstanding that the statute under which the indictment is found mentioned both the *genus* and the species. This rule seems to be a correct and just one. Where the proof is clear that a species of the *genus* alleged in the indictment has been stolen, such proof will sustain the charge."

The text above recited gives reference to many cases to sustain and elucidate the text, most, if not all, of which are common-law cases.

SMITH, J.—The appellant was indicted for the theft of a horse. Upon the trial it was proved that the animal stolen was a mare. The court instructed the jury that the proof of the theft of a mare was sufficient to support the indictment. The defendant was convicted, and he has appealed to this court.

Art. 765, O. & W. Dig., Penal Code, under which he was indicted, reads as follows, to wit: "If any person shall steal any horse, gelding, mare, colt, ass, or mule, he shall be punished by confinement in the penitentiary, not less than five nor more than fifteen years."

The word "horse" is a generic term, including ordinarily in its signification the different species of that kind of animals, however diversified by age, sex, use, or artificial means; and if the word "horse" had been used in this article, without specifying the species, we would have been entirely satisfied with the ruling of the court, because the word "horse" in its generic sense would include a mare, and there would be no variance between the averment and evidence. It could not be contended successfully that the defendant had been indicted for stealing one thing and convicted for stealing another and different thing.

But from precedent and authority we feel constrained to hold, that the word "horse," in the article cited, was not intended to be used in its comprehensive and generic sense, and that it was used as synonymous with

the word "stallion," or at least it was not in that connection intended to include "gelding, mare, or colt." It is our duty to give to the article such a construction as will give effect and meaning to each word as nearly as can be consistently done with the object and purpose of the legislature. The statute itself, in creating and providing for the punishment of the offense, appears to fix its own meaning to the words used. It specifically describes the different species of property by the use of the words "horse, gelding, mare, colt, ass, or mule," evidently discriminating between them as different species of property, and as much between horse and mare as between horse and ass or mule. The averments of the indictment must be equally specific, and the proof must correspond with the averment. This construction of similar statutes has been adopted in England. (Whart. Amer. Crim. Law; Roscoe Crim. Ev.; 2 East, P. C., 616; Leach, 123; 1 Moody C. C., 24; Arch. Crim. Plead. and Prac., p. 399 and notes; 2 Russ. on Crim. Law, 133.) And the same rule, under like statutes, has been adopted in the United States, so far as we have been enabled to examine the authorities. (Hooker v. The State, Ohio, 349; Turly v. The State, 3 Humph., 324.)

If this rule has been departed from apparently, it has been where the statute has used the generic term in respect to the animals, as is done in O. & W. Dig., Penal Code, Art. 766, in respect to neat cattle, sheep, goats, and hogs.

A different rule would govern under this article, for the reason that the generic terms are only used which include the species; such as "sheep" includes "ewe, wether, and lamb," &c. And the fact that the species are not named in this article is an argument in favor of the views we have taken in respect to the one next preceding it. (1 Scam., 304; 20 Vt., 537; 22 Tex., 591.)

Other authorities might be cited, but we deem these

sufficient, and for the errors apparent the judgment is reversed, and cause remanded for further proceedings.

REVERSED AND REMANDED.