## STATE v. MATEJOUSKY.

On objections to an information or to a witness for failure to indorse his name on the information, the court will presume that the state's attorney properly performed his duties, and that a witness not indorsed was not known to him when the information was filed.

Rev. Code Cr. Proc. §§ 206, 216, 263, requiring the names of witnesses examined by the grand jury and of those known to the state's attorney when the information is filed to be indorsed on the indictment or information, does not preclude the calling of witnesses whose names are not required to be indorsed.

Neither Const. art. 6, § 7, giving accused the right to demand the nature and cause of the accusation, nor the right to a fair and impartial trial, requires notice to the accused previous to the trial of all witnesses who may be called by the state.

Assuming that the court may protect a defendant from an unfair disadvantage by excluding competent testimony for the state of which the defendant had no previous notice, the refusal of such pro-

tection is not ground for reversal in the absence of manifest abuse of discretion.

Where a witness was subpoenaed for several weeks before the trial, and, when the case was called , the state's attorney asked leave of court to indorse his name on the indictment, and there was no showing at his testimony and no application for a postponment, it was no abuse of discretion to admit the testimony, though defendant had not been notified before the trial that the witness would be called.

Under Rev. Pen. Code, §§ 605, 607, 608, as amended by Laws 1903, p. 175 c. 151, making it grand larceny to take property exceeding $20 in value, or when the property, though not of value exceeding $20, is a stallion, mare, gelding, horse, or colt, there is no variance between an information alleging larceny of a horse and proof of the larceny of a gelding, especially in view of Rev. Code. Cr. Proc. § 569, providing that neither a departure from the form or mode prescribed as to any pleading nor error therein renders it invalid, unless it has prejudiced defendant, and section 229, providing that an indictment is sufficient if the act charged is clearly set out in ordinary and concise language, so as to enable a person of common understanding to know what is intended.

(Opinion filed, February 5, 1908.)

Error to Circuit Court, Stanley County. Hon. LYMAN T. BOUCHER, Judge.

Frank Matejousky was convicted of larceny of a horse, and brings error. Affirmed.

*Gaffy & Stevens,* for plaintiff in error.

At common law it was sufficient to describe the property as a horse or horses, but within states having statutes such as our Chap. 151, laws of 1903, such a description is insufficient. The word horse. when used in an information in a state having such a statute, is not used in its generic sense. If the word means anything under such a statute, it indicates a stallion    Banks v. State, 28 Tex. 648, State v. Buckle, 26 Kan. 241; State v. Brookhouse, 10 Wash. 87; Turley v. State, 3 Humph. 323; Brown v. State, 86 Ga. 633; Swindle v. State, 32 Tex. 102; Jordt v. State, 31 Tex. 571. The distinction recognized by the statute must be heeded in the form of the information and the averments of the indictment must be as specific as the statute. 1 Bish. New Criminatl procedure, paragraphs 619 and 620.

*S. W. Clark,* Atty. Gen., *C. D. Sterling,* Asst. Atty. Gen., and *John F. Hughes,* State's Atty. for State.

An inspection of the information in this case shows that it was made under subdivision 2, and charges the larceny of personal property exceeding in value the sum of twenty dollars. Under a statute like ours, it is sufficient in charging the larceny of an animal, to name the kind or class, using the generic term therefor. Thus, it is sufficient to charge the larceny of a horse, and under this charge may be proved the larceny of any one of the horse family, towit: a stallion, mare, etc. McLain on Crim. Law. Sec 594; State v. Hellickson, 13, S. D. 244; People v. Barnes, 65 Cal. 16.

HANEY, P. J. On July 9, 1906, when the information in this case was filed in the circuit court, Gay Grant's name was not indorsed thereon. On January 16, 1907, when the cause was called for trial, the state's attorney asked leave to indorse Grant's name, stating that it was not known to him when the information was filed. Defendant objected on the ground that it appeared from the papers on file in the case that a subpoena was issued by the state's attorney for the witnesses, before the then present term of court; that the witness was known to the state's attorney before the commencement of the then present term, and that no notice was given to defendant or his counsel that the state's attorney would ask to have the witness' name endorsed or that his testimony would be used, before the cause was called for trial. The objection was overruled and the witness' name endorsed. When Grant was called as a witness, defendant objected to his testimony, on the ground that his name had not been endorsed in the manner required by law, and that the files in the case showed that the witness was known to the state's attorney before the latter asked permission to make the endorsement. This objection also was overruled, and the witness gave testimony prejudicial to the defendant. When these objections were overruled, there was in the files of the case a subpoena issued December 24, 1906, for Grant and others as witnesses in the case, which was endorsed by the judge, requiring the attendance of the witnesses named therein, and which was returned by the sheriff as having been served upon each of such witnesses and filed with the clerk January 14, 1907, but neither the subpoena nor files was offered in evidence or called to the attention of the court otherwise than by the objection first above stated. Defendant's objections did

not assume, nor did the files disclose, that the witness was known when the information was filed. The court was bound to presume that the state's attorney had properly performed his duties. So, for the purpose of these objections, the fact stood established that the witness was not known when the information was filed. Witnesses known to the state's attorney when the information is filed and those examined before the grand jury are governed by the same rule; the failure to endorse the names of either being a ground for the setting aside of the information or indictment, as the case may be. Rev. Code Cr. Proc. §§ 206, 216, 263. The rule requiring the endorsement of witnesses known to the state's attorney or those examined before the grand jury does not preclude the state from calling witnesses whose names are not required to be endorsed. State v. Church, 6 S D. 89, 60, N. W. 143. One accused of crime is not entitled as a matter of right to previous notice of all witnesses who may be called by he state Territory v. Godfry, 6 Dak. 46, 50 N. W. 481. No such right is guarantied by the Constitution. State v. King, 9 S. D. 628, 70 N. W. 1046; St. Const. art 6 § 7. Notice of the nature and cause of the accusation does not include notice of the nature of the evidence which will be produced, further than the same may be indicated by the allegations of the information or indictment. Nor does a "fair and impartial trial," to use the language of counsel for defendant, require that the accused shall be placed in a more favorable position than that occupied by the government. The prosecution may be surprised by unexpected evidence, as well as the defense. The reasons for requiring that the defendant shall know in advance what witnesses will be called by the state are not more cogent than are the reasons for requiring that the state's attorney shall know in advance what witnesses will be called by the defendant. State v. King, supra. If fairness be the test, both parties, or neither, should be furnished with the names of the other's witnesses. Under the statute as it now stands, the advantage is with the defendant. The names of all witnesses known to the state's attorney when the information is filed, and of all witnesses examined before the grand jury, must be indorsed, while the state's attorney need not be informed as to any of the defendant's witnesses. The rule

prescribed by the statute is not unfair to the defendant. In this case the defendant received notice that Grant would be called when the state's attorney asked leave to endorse his name on the information The law neither required nor authorized an indorsement at that time. The endorsement was an idle act which affected no substantial right, and the only material question is whether the court erred in permitting the witness to testify His name having been unknown when the information was filed, he was a competent witness under the rule prescribed by the statute. This in effect, is conceded, but consul contend that the defendant in a criminal action is entitled to a fair trial, that good faith on the part of the state requires that he be given timely notice of the witnesses to be called against him, and that such notice was not given in this instance—citing in support of their contention the case of State v. Reddington, 7 S. D 368. 64 N. W. 170. When that case was decided, the court prepared its own head notes, which must be regarded as correctly expressing the rules and principles established by its decisions. Concerning the subject under discus-ion, the court said: "While it is not ordinarily error for the trial court to allow the examination of other witnesses than those whose names are endorsed on the indictment, yet the state ought not to be permitted to purposely withhold from the defendant the names of such witnesses whom it expects to examine, and the trial court would be justified in protecting a defendant, under such circumstances, from unfair disadvantage therefrom." Whether or not the state ought to be permitted to purposely withhold from the defendant the names of witnesses whom it expects to examine is an ethical rather than a legal, question, concerning which there is ample room for differences of opinion, and one which must necessarily be affected by the circumstances of each particular case. However this may be, no one will deny that a trial court has power, in the exercise of a sound legal discretion, to protect either party to a criminal action from the effects of unavoidable accident or surprise resulting from the offer of unexpected evidence or other cause, but this court did not hold in State v. Reddington, nor do we think any court should hold, that such protection should be afforded by the exclusion of competent testimony: the proper procedure in such cases being to postpone the trial or grant a new one. But, assuming that an exceptional case might arise in which the trial court would be justified in protecting a de-

fendant from an unfair disadvantage by excluding competent testimony offered by the state, the decision as to whether such a case has arisen is one peculiarly within the providence of the trial judge which should not be reversed in the absence of manifest abuse of discretion. No such abuse is shown by the record in the case at bar. If the trial court was bound to take notice of what the files disclosed, the only fact on which defendants objection rested was the issuing of a subpœna several weeks before the trial began. If 't was issued by the state's attorney, he may or may not have known that Grant would be called as a witness for the state, but that fact would neither compel nor justify the inference that he had purposely withheld notice from the defendant or that the defendant was without notice. On the contrary, if such a subpœna was issued and served, it would be fair to assume that the defendant or his counsel would have heard something about it. As heretofore stated, defendant was notified that Grant would be offered as a witness, when the cause was called for trial, by the state's attorney's request to indorse. The record is silent as to the time which elapsed between the calling of the cause and the giving of Grant's testimony. There may have been ample time to prepare for its reception. There is nothing to indicate that defendant was surprised. He did not ask a postponement. For ought appearing in the record he or his counsel may have known for months that Grant would be called and what his testimony would be. In any view of the case, it was not reversible error to overrule defendant's objections.

The defendant was convicted of grand larceny. The property alleged to have been stolen was described in the information before the examining magistrate and in the circuit court as "four horses," of the value of $300, the property of W. A. Porch, while the evidence at the preliminary hearing and on the trial disclosed the taking of four geldings, of the value of $300 the property of W. A. Porch. On the hypothesis of a fatal variance between the pleadings and proof, it is contended the court erred in overruling defendant's motion to set aside the information, his demurrer to the information, and his objection to the introduction of any evidence. If there had been a variance, the proper procedure would have been a request to charge that the defendant could not be convicted under the allegations of the information for the larceny of geldings; but there was no material variance. Larceny is

the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof. Larceny is divided into two degrees, the first of which is termed 'grand' larceny, the second 'petit' larceny. Grand larceny is larceny committed in either of the following cases: (1) When the property taken is, of value exceeding twenty dollars. (2) When such property although not of value exceeding twenty dollars, is taken from the person of another. (3) *When such property although not of value exceeding twenty dollars, is a bull, steer, cow, heifer or calf, or is a stallion, mare, gelding, horse or colt.* Larceny in other cases is petit larceny." Rev. Pen. Code, §§ 605, 607, 608, as amended by Laws 1903, p. 175, c. 151. The italicized words were added by chapter 151, Laws 1903. All the authorities agree that the word "horse" is a generic term, ordinarily including in its signification the different species of that kind of animals. and generally it is sufficient in charging larceny to describe an animal by the name of the class to which it belongs. 12 Ency. Pl. & Pr. 984. This certainly is so where the name of the class only is employed; but where the statute has also specified the species, the authorities are conflicting. Thus under a statute providing: "If any person shall steal any horse, gelding, mare, colt, ass, or mule, he shall be punished" as therein prescribed—it was held that the statute gave a meaning of its own to the words, that the word "horse" was not used in the generic sense, and that proof of a theft of a mare would not sustain the charge of stealing a horse. Bank v. State, 28 Tex. 644. Where to the animals named in the Texas statute were added "neat cattle, sheep or hog," for substantially the same reasons, it was held that evidence showing the larceny of a gelding would not sustain the charge of stealing a horse. State v. Buckles, 26 Kan. 237. And where the statute read: If any person shall steal a horse, mare, gelding, foal or filly, ass or mule or any one or more head of neat cattle, or any one or more head of sheep, of any value" etc.—it was held by a divided court that an information was defective which described the property as "twenty-five head of cattle." State v. Brookhouse, 10 Wash. 87, 38 Pac. 862; 2 Hill's Codes, Wash. p. 665 On the other hand, where the trial court instructed the jury that one charged with the larceny of a "horse" could not be convicted by proof showing the larceny of a mare, the judgment was reversed on appeal by the state; the appellate court reviewing

the authorities and stating its reasons as follows: "Our statute is as follows: Whosoever shall be convicted of stealing any horse, mare, gelding, filly, foal, mule, ass or jenny shall be imprisoned at hard labor in the penitentiary not less than five nor more than fifteen years. Sand & H. Dig. § 1701. There are cases which hold, under statutes similar to this one, that a defendant charged with stealing a horse cannot be convicted by proof that he stole a mare or gelding. The doctrine of these cases is that inasmuch as the statutes mentions not only 'horse,' but also 'mare' and 'gelding,' therefore the one really meant should be stated. This was at one time the rule in England. Rex v. Puffioot, 1 Moody, 247. But the modern cases there hold, to the contrary, that the word 'horse' is a generic term, and includes both 'mare' and 'gelding,' and that a charge of stealing a horse is supported by proof that either a stallion, mare, or gelding was stolen. Rex v. Aldridge, 4 Cox, C. C. 143. This modern rule, which Mr. Bishop denominates the 'rule of reason,' is thus stated by Taylor in his work on evidence: 'With respect to the description of animals the stealing of which is made a statutable offense, it would seem to be sufficient to use the generic term which includes the whole species, even though the act should employ more specific language.' 1 Taylor, Evidence § 290. The weight of modern authority, as well as reason, seems to be in favor of the rule thus stated, and under it the word 'horse,' in a statute like ours, is to be taken in its generic sense, and includes a mare. 1 Bish. Crim. Pro. § 620; Bish Statutory Crimes, § 247; Rex. v. Aldrich, 4 Cox, C. C. 143; People v. Pico, 62 Cal. 50; People v. Monteith, 73 Cal. 7, 14 Pac 373; State v. Donnegan, 34 Mo. 67." State v. Gooch, 60 Ark. 218, 29 S. W. 640. The law involved in the California cases was more nearly the same as it now is in this state than any we have examined. Under it grand larceny is committed in either of the following cases: "(1) When the property taken is of value exceeding fifty dollars. (2) When property is taken from the person of another. (3) When the property taken is a horse, mare, gelding, cow, steer, bull, calf, mule, jack, jenny, goat, sheep, or hog." 4 Deering's Cal. Codes, p. 121. Because of this similarity the decisions from California merit special consideration. In People v. Pico the defendant was charged with the larceny of one roan "horse." The evidence disclosed the larceny of a mare; and the court below re-

fused to instruct the jury to acquit on the ground of variance. As to this refusal, the Supreme Court said: "Although the courts of some of the states have held under a statute similar to that of this state, * * * where both words 'horse' and 'mare' are used, the proof must agree with the indictment as to the sex of the animal, yet as at common law the word 'horse' was used in its generic sense, and was held to include all animals of the horse species, whether male or female, we are of opinion that the Legislature of this state, in using the word 'mare,' did not intend to modify or change the common-law rule, but inserted the word possibly for more definiteness." If this was sound reasoning as applied to the California statute, and we think it was, how much more forceful it is as applied to our own; it being manifest that the amendment of 1903 was not designed to create or define a new offense, but merely to provide that when any animal of the genus equus is stolen grand larceny is committed, although its value may not exceed $20.

The contention that the judgment in this case would not bar a prosecution for the larceny of the same animals if they were alleged to be geldings in the second information is untenable. The rule would be the same in one case as the other. If, for the purposes of this action, the word "horse" should be taken in its generic sense, it would have the same meaning when this record would be introduced in evidence in support of the plea of former conviction. Then, as now, it would include geldings.

And, though the description of the property might have been more definite, defendant's conviction was not invalid, for the reason that he was informed by the proceedings before the examining magistrate as to the particular animals involved, and could not have been prejudiced in respect to any substantial right. Rev. Code Cr. Proc. § 569. But there was no departure from prescribed forms of pleading. The information was sufficient, in that the act charged as the offense was clearly and distinctly set forth in ordinary and concise language, in such a manner as to enable a person of common understanding to know what was intended (Id. § 229), and its allegations, giving to the word "horse" either its ordinary or legal meaning, included the property shown by the evidence to have been stolen.

The judgment of the circuit court is affirmed